C. L. BLANCETT, Mayor, et al., Appellants,

v.

S. C. MONTGOMERY et al., Appellees.

Court of Appeals of Kentucky.

Feb. 4, 1966.

William E. Quisenberry, Calhoun, for appellants.

William G. Craig, Ronald M. Sullivan, Sandidge, Holbrook, Craig & Hager, Owensboro, for appellees.

MONTGOMERY, Judge.

This appeal is from a judgment holding void as unconstitutional an ordinance of the City of Calhoun, of date August 6, 1957, which prohibits exploration for oil or gas within its corporate limits. The trial court found the ordinance was unreasonable, arbitrary and discriminatory, and also that it contravened the express public policy of the Commonwealth of Kentucky. Appellants, who are the mayor and the councilmen of the City of Calhoun, were enjoined from doing any act to enforce the ordinance.

The primary question to be resolved in this appeal is: Assuming the ordinance adopted by the City of Calhoun on August 6, 1957, forbidding the exploration for oil and gas within the corporate boundary of that city to be invalid, does the general zoning ordinance, duly and regularly passed by it on September 3, 1963, prevent drilling for oil and gas in an area classified as R–2 (residential), wherein no commercial operations are permitted? There are other contentions raised which will be answered in the course of this opinion.

The City of Calhoun is a fifth-class municipality, consisting of 355.18 acres and having a population in 1960 of 817 persons. It is also the county seat of McLean County. On August 6, 1957, the city council of Calhoun adopted its prohibitory ordinance dealing with the exploration for minerals including oil and gas within the city limits. Thereafter, after more than two years of planning, the city council of Calhoun enacted a general zoning ordinance on September 3, 1963, affecting all property, classifying in five ways the land use within that city.

In April 1965, oil was discovered in paying quantities on a 28.6-acre tract which joins the east boundary of Calhoun. Soon oil was found on two other tracts in that vicinity. One well is within 150 feet of the city limits. This action was instituted to have the ordinance of August 6, 1957, declared void. In their complaint appellees, landowners inside the city limits whose property is contiguous to the territory where oil is being extracted, averred that oil in commercial quantities has been found on land adjacent to the City of Calhoun and adjoining their land; that the pumping of such substance from underneath the adjacent land is having the result of draining it from underneath their property; and that the effect of the prohibitory ordinance arbitrarily and unreasonably prevents them from protecting their property rights by

recovering therefrom any oil that may be explored for and produced on their land. The ordinance in the given instance, they alleged, constitutes an infringement upon their constitutional rights in that it allows their property to be taken from them without due process of law.

The area in which oil wells are proposed to be sunk is a tract of land, for the most part vacant, located on the Green River in the southeastern portion of the city. It is situated only 2 blocks from the business district of the city, and in this district is included the courthouse and the county buildings. Under the general zoning ordinance of September 3, 1963, the area was classified solely for residential use. The trial court did not pass upon the question of whether to permit drilling in the area proposed by appellees would or would not violate the zoning ordinance now in effect.

A witness introduced by appellants testified concerning conditions which still exist in the town of Sebree, Kentucky, where drillings for oil were conducted some ten or twelve years ago. In one particular park area, salt water produced from the sinking of wells had killed all of the trees with the possible exception of one tree which is now half-living; and no vegetation had grown in the area during or since that time. Another witness of appellants told of his experience with drilling operations in Livermore, Kentucky, where oil wells were sunk within its city limits more than thirty years ago. This person stated that since that time he had been unable to get vegetation to grow, except for a small amount of grass, in the area of the slush pits.

Also, another witness of appellants, who lives in the portion of the City of Calhoun in close proximity to the land where drilling operations have been in progress for some time, testified that because of the increased movement of traffic he was unable to use his driveway; that big trucks deposited mud and other filth upon a newly constructed blacktop road which created clouds of offensive dust when it became dry; and that the noise from the drilling machinery was so intense he was unable to sleep or enjoy his home life.

The Legislature of Kentucky has granted to municipalities of the fifth class the power to regulate and restrict the use of land for the common benefit. The relevant statute, KRS 100.520, which sets forth the purpose of zoning in such a city, reads:

> "Regulations shall be made in accordance with a comprehensive plan and shall be designed to lessen congestion in the streets; to secure safety from fire, panic, and other dangers; to promote health and the general welfare; to provide adequate light and air; to prevent the overcrowding of land; to avoid undue concentration of population; to facilitate the adequate provision of transportation, water, sewerage, schools, parks, and other public requirements. The regulations shall be made with reasonable consideration of the character of the district and its peculiar suitability for particular uses, and with a view to conserving the value of buildings and encouraging the most appropriate use of land."

■ The case at bar presents an unusual zoning problem of first impression in this state. Other jurisdictions, however, have resolved the precise question now before us. It has been observed there is a substantial difference between an enactment which does not allow a manufacturing or commercial business in a residential district which may be conducted in another locality with equal profit and advantage, and one which has the effect of wholly depriving the owner of land of the natural products thereof and of the right to remove or work them. This distinction becomes one of degree as to the hardship imposed, for it may be assumed that some hardship, actual even if not recognizable in law, results to one who is prevented from utilizing his land in this regard. See annotation to 168 A.L.R. 1198.

■ The validity of a general regulation must therefore be tested by the general principles of constitutional law applicable to the particular challenge interposed. Most general regulations, of course, involve an exercise of the police power, with its accompanying rule of "reasonableness." See annotation to 168 A.L.R. 1189.

In Fried v. Louisville and Jefferson County Planning and Zoning Commission, Ky., 258 S.W.2d 466, we held the justification for a zoning restriction is the greater benefit which accrues to the public as a whole, and hardship to an individual is not sufficient to show that the action was arbitrary or discriminatory. In City of Richlawn v. McMakin, 313 Ky. 265, 230 S.W.2d 902, this Court pointed out that if the activity sought to be substituted by rezoning as commercial a residential district would lessen the beauty and safety and increase the noise and confusion of a particular area, a denial of the proposed change would not be unreasonable and arbitrary, within the purview of KRS 100.520. That opinion also contained this relevant statement:

> " * * * The presumption is in favor of the ordinance and the burden is on the property owner attacking it to show its unreasonableness. Should reasonable minds differ as to whether the restriction has a substantial relation to the public health, morals, safety, or general welfare, the ordinance must stand as a valid exercise of the police power. * * *."

It was stated in Schloemer v. City of Louisville, 298 Ky. 286, 182 S.W.2d 782, that " * * * It is the function of the legislative body of the city to determine whether or not conditions warrant a zoning ordinance, and its determination on the subject will not be disturbed in the absence of a showing that its action was arbitrary or an irrational exercise of power having no substantial relation to the public health, morals, safety or general welfare. * * *."

In Marblehead Land Co. v. City of Los Angeles, 9 Cir., 47 F.2d 528, a city ordinance was upheld which forbade oil well drilling on a 291-acre tract of unimproved land, seven miles from the heart of the city and 1100 feet from the nearest home. Standard Oil Company of California had leased the property for the sum of $65,000 to explore for oil and gas and had spent an additional $136,000 developing the lease. The City of Los Angeles zoned the property residential and denied a permit to explore for oil and gas. The Marblehead Land Company brought suit against that city claiming the zoning ordinance amounted to the taking of property without due process of law, in violation of its constitutional rights, and that the zoning ordinance was an unreasonable exercise of the police powers.

The United States Circuit Court of Appeals of the Ninth District reasoned that the legislative body of a municipality entrusted with police power has a wide discretion in exercising such power; that ordinances of a municipality enacted pursuant to its police power are invested with a strong presumption of validity; and that if a question arises whether an ordinance is an unreasonable or arbitrary exercise of police power, the ordinance must be upheld as valid. That court also declared it is a matter of common knowledge that oil wells, particularly in new territory, sometimes get beyond control and cause disastrous fires.

Some of the cases arise where a municipality by ordinance allows drilling in the corporate limits within one zone and prohibits it in another. In answer to certain persons who complained that such a system was an arbitrary exercise of power because they were denied the right to exploit their lands for oil, it was said in K. & L. Oil Co. v. Oklahoma City (DC Okla.) 14 F.Supp. 492: " * * * Taking the situation as it now exists, can reasonable men honestly differ as to the zoning of this tract for oil? If they can, then the Council and not the court is the one to determine the question. * * *."

As a general proposition a valid exercise of the police power resulting in expense or loss of property is not a taking of property without due process of law or without just compensation, nor does it abridge the equal protection clause of the Fourteenth Amendment to the Constitution of the United States. See McQuillin, Municipal Corporations (3d ed.), Vol. 6, secs. 24.05, 24.06.

Perhaps the foundation case on zoning powers in Kentucky is Fowler v. Obier, 224 Ky. 742, 7 S.W.2d 219, whereby the initial zoning ordinance of the City of Louisville was attacked on the general grounds alleged in the instant case, that it amounted to a taking of property without due process of law and that it was an unreasonable and arbitrary exercise of legislative power. In a long detailed opinion, the Court found that the ordinance did not constitute the taking of property without due process of law and that the ordinance was a reasonable exercise of the police power. The Court further held that regardless of specific authority delegated to the city by the Legislature to zone, the city had sufficient power under the general police power to enact a zoning ordinance.

Appellees argue that KRS 353.500 declares the public policy of Kentucky as to the correlative rights of land and mineral owners, on the one hand, and of cities, on the other. They assert the foregoing statutory provision restricts the power of any city to prohibit the business of drilling for oil and gas within its limits; they maintain a city may do nothing more than regulate, that is, state where wells may be sunk. They call attention to the fact that the duly authorized officer of the Commonwealth of Kentucky, the Director of Oil and Gas, has issued a permit to them to explore for and recover oil or gas on their lands. It is, therefore, urged that the City of Calhoun is without authority to interfere with the prerogative reposed in and exercised by the Director of Oil and Gas.

No persuasive authority is cited which upholds the position taken by appellees. It is the view of the Court that the statement of policy must be interpreted in conjunction with and subordinate to the basic powers possessed by municipalities. The Court does not concur in the argument that KRS 353.500 preempts the authority of municipalities under their police power to regulate oil and gas activities within their city limits. It is concluded that the general zoning ordinance of the City of Calhoun adopted September 3, 1963, is a valid ordinance which controls to the extent it classifies land uses permitted under its terms.

The judgment is reversed and the case is remanded for the entry of a new one consistent with this opinion.