Joseph C. **HOFGESANG**, Joseph C. Hofgesang Sand Company, the Estate of Myrtle S. Hofgesang and James Fisher, Appellants,

v.

M. J. **McMAKIN**, D. F. Parrot, Edwin F. Shaver, Ernest F. Worfel, John P. Sawyer, Rufus C. King, Sammie F. Lee, Jack Quick, Marlow W. Cook, William O. Cowger, members of and constituting the Louisville and Jefferson County Planning and Zoning Commission, E. P. Sawyer, County Attorney, Jefferson County, Kentucky, Elmer N. Norrington and Joseph L. Soper, Zoning Enforcement Officers of Jefferson County, Kentucky, and its Fiscal Court, Appellees.

Court of Appeals of Kentucky.

June 6, 1969.

Modified on Denial of Rehearing
Oct. 16, 1970.

Henry A. Triplett and Hogan, Taylor, Denzer & Bennett, Hardy & Hardy, Louisville, for appellants.

Mark Davis, Jr., Louisville, for appellees.

MONTGOMERY, Chief Justice.

This litigation began in December, 1964, when Louisville and Jefferson County Planning and Zoning Commission, the County Attorney, and other zoning enforcement officers sued Joseph C. Hofgesang, Joseph C. Hofgesang Sand Company, the Estate of Myrtle S. Hofgesang and James Fisher, appellants, claiming that they were carrying on an illegal operation on ten acres of ground located in Jefferson County on the north side of Lee's Lane and between a floodwall and the Ohio River. Specifically, it was charged that appellants were operating a borrow pit, an earth excavation operation, and a dump.

The statutes involved are KRS 100.031 through 100.097, repealed and replaced in 1966 by KRS 100.111 through 100.991. The local laws involved are the city-county zoning regulations, adopted by the City of Louisville by ordinance and by the Jefferson County Fiscal Court by resolution and, more specifically, Section 30 of these regulations entitled "Special Uses." Also involved is a provision that any use of property existing prior to adoption of the zoning regulations (1943 originally) may continue as a "nonconforming use."

Appellants contend that (1) there is no authority which permits counties containing cities of the first class to adopt specific use planning and zoning regulations; (2) Section 30 of the regulations is void because the standards are so vague and indefinite as to vest arbitrary power in the local zoning officials; (3) the evidence does not sustain the chancellor's finding of the absence of a nonconforming use; (4) appellants attempted to comply with the regulations, and (5) the chancellor acted in excess of authority in requiring the appellants to refill the excavation with materials similar to those which had been excavated.

Appellants insist that there is no statutory authority under which Section 30 of the Commission's Regulations may be justified. In Fowler v. Obier, 224 Ky. 742, 7 S.W.2d 219, the City of Louisville zoning ordinance was upheld as a proper exercise of the police power although the statutory authority was couched in broad language authorizing the city to enact any ordinance "for the government of the city" not in conflict with constitutional limitations or other statutes. Fowler has recently been approved in Blancett v. Montgomery, Ky., 398 S.W.2d 877, 10 A.L.R.3d 1220.

The exercise of the police power by the City of Louisville had previously been upheld in City of Louisville v. Wehmhoff, 116 Ky. 812, 76 S.W. 876, 25 Ky.Law Rep. 995, and Buchanan v. Warley, 165 Ky. 559, 177 S.W. 472, Ann.Cas. 1917B, 149. Cf. Puryear v. City of Greenville, Ky., 432 S.W.2d 437. More recently, in 1942, the Commission was authorized to adopt Planning and Zoning Regulations by Chapter 100, Kentucky Revised Statutes. Nonconforming uses of land were specifically recognized by KRS 100.068. Section 30 defines nonconforming use in conformity with the statute. It was inherent in KRS 100.067 authorizing the regulation of the "use of land for trade, industry or residence, or other purposes" that regulations covering special or nonconforming uses are justified. There is ample statutory authority for the "special uses" section of the regulations. Pierson Trapp Co. v. Peak, Ky., 340 S.W.2d 456, and Thomas v. Bar-

nett, Ky., 397 S.W.2d 781, do not support appellants' contention. Under the statutes here the final action under the Regulations on a special or nonconforming use is reserved to the Board of Aldermen and the Fiscal Court.

It is claimed that the standards in Section 30, the Special Uses Regulation, are so vague and indefinite as to vest arbitrary power in the local zoning officials. The regulations consist of eighteen pages, mostly single-space typewritten, setting forth general standards and specific standards relating to various types of special uses.

In general, it is provided that the special "uses will not have an adverse effect on neighboring property, are not in conflict with the elements and objectives of the Master Plan, and will not adversely affect the public health, safety, morals, and the general welfare."

The request for a "Special Uses Permit" must contain the "provisions for, and guarantees to assure, the protection of the public health, safety, morals, general welfare, surrounding property and neighborhood values."

Excavation and filling operations including borrow pits and earth excavations are governed by detailed subsections including general and specific provisions concerning special use in order to conform to the general standards already mentioned. All of these are copied in length in twelve and one-half pages of the chancellor's opinion.

■ Without discussing the safeguards provided by the standards set forth as mentioned, it is concluded that Section 30 contains specific standards to meet the requirements of Commonwealth v. Associated Industries of Kentucky, Ky., 370 S.W.2d 584, and Jasper v. Commonwealth, Ky., 375 S.W.2d 709. Schneider v. Wink, Ky., 350 S.W.2d 504, is not dispositive of this case, as appellants insist, since the ordinance there was definitely lacking in the required standards.

The chancellor found that the appellants did not have a nonconforming use. KRS 100.068 recognized the right to continue a nonconforming use. The statutes involved were enacted in KRS, Chapter 100, in 1942 and were amended in 1948. In 1943 the original ordinance pursuant to KRS, Chapter 100, was enacted. There is evidence that prior to 1964 the land in question was in its natural state, with the exception of a driveway, a boat launching ramp and a clubhouse. Beginning in 1964 appellants commenced using large earth-moving equipment to remove huge quantities of earth, sand, gravel and loam. The chancellor found that this use of the property was in violation of the zoning regulations in that no borrow pit or earth excavation pit existed when the regulations became effective on May 10, 1943.

■ The evidence for appellees, in substance, is that there were no excavations prior to May 1964, and that the land had not been used except for agriculture and religious activity, recreation and sporadic hunting. In 1955 some barges were loaded. The testimony of Joseph C. Hofgesang tends to corroborate the evidence for the appellees. He testified that the property had been used for agricultural purposes and that a clubhouse had been used in connection with a residential subdivision. He undertook to establish a continuing nonconforming use but his vague and uncertain testimony, at best, showed a few instances of small earth removal over the entire period prior to 1964. He said that the clubhouse had been used variously as a clubhouse for political meetings and as a church or tabernacle. From 1943 to 1952 the tract was rented to a religious group who used the clubhouse as a place of worship. On this testimony the chancellor's finding is properly supported. CR 52.01.

■ Appellants admit the correctness of the chancellor's finding that their use was intermittent but insist that the intermittent use is sufficient to sustain a nonconforming use. There is no showing in behalf of

appellants that prior to the enactment of the zoning ordinance they had, in good faith, substantially entered upon the performance of a series of acts necessary to the accomplishment of the end intended; that is, to create a borrow pit or earth excavation pit. Darlington v. Board of Councilmen of City of Frankfort, 282 Ky. 788, 140 S.W.2d 392. The establishment of a nonconforming use has been considered previously and the claim of nonconforming use here does not meet the requirements set forth. See Durning v. Summerfield, 314 Ky. 318, 235 S.W.2d 761; Feldman v. Hesch, Ky., 254 S.W.2d 914; City of Bowling Green v. Miller, Ky., 335 S.W.2d 893, 87 A.L.R.2d 1, and City of Middlesboro v. Billingsley, Ky., 371 S.W.2d 23. These cases discuss the shifting from a passive use to an active use or the abandonment of a use. Cf. Hobbs v. Markey, Ky., 398 S.W.2d 54. In Attorney General v. Johnson, Ky., 355 S.W.2d 305, wherein abandonment and established use were discussed, the court said:

"The policy and spirit of the zoning law of this state ordains the gradual elimination of nonconforming uses, and the general intent of ordinances dealing with the subject matter is to hold nonconforming uses within strict limits; and any change effected, as subsection 2 of KRS 100.355 requires, must be 'to another nonconforming use of the same or more restricted classification.' "

The evidence was insufficient to establish a nonconforming use.

■ Somewhat belatedly appellants, on April 2, 1965, filed an application to have the zoning of the property changed to M-3 and for a Special Uses Permit. The deficiencies in the application were pointed out to appellants who, apparently, never supplied them. The chancellor held, quite properly, that such filing did not estop appellees from seeking injunctive relief.

Appellants were permanently enjoined from maintaining a filling operation, a dump or a land fill, or any use or activity incidental thereto. Appellants had removed quantities of earth from the property involved prior to the entry of final judgment. Now they complain that they should not be compelled to comply with the judgment which requires that they restore the property involved to the shape and slope of the land in its condition as it existed prior to the beginning of the earth excavation resulting in this litigation by filling the excavation with sand, gravel or other earth materials. The use of waste or refuse materials for this purpose was forbidden.

■ Appellants seek to avoid this consequence but, as the chancellor pointed out, the appellants "assumed the risk attendant to the operation and the results of this litigation, since they, of their own accord and of their own volition, continued their operations, they must now be content to face the consequences and fill the hole that they have dug with the same or similar substances to that which they removed from it." Little need be added. They gambled and lost. To hold otherwise would bring discredit to the judicial process.

Judgment affirmed.

All concur.