COMMONWEALTH of Kentucky, NATU-
RAL RESOURCES AND ENVIRON-
MENTAL PROTECTION CABINET,
Appellant/Cross-Appellee,

v.

STEARNS COAL AND LUMBER COM-
PANY, Appellee/Cross-Appellant.

Supreme Court of Kentucky.

Jan. 19, 1984.

Rehearing Denied Nov. 15, 1984.

Carl W. Breeding and Arthur L. Williams, Frankfort, Mark E. Gormley, Versailles, for appellant/cross-appellee.

Lively M. Wilson, Winfrey P. Blackburn, Jr., Stites & Harbison, Ronald D. Ray, Greenebaum, Doll & McDonald, Louisville, for appellee/cross-appellant.

W. Henry Graddy, IV, McCauley, Elam, Overstreet & Graddy, Versailles, Oscar Geralds, Geralds, Moloney & Jones, Thomas J. FitzGerald, Lexington, for amicus curiae.

WINTERSHEIMER, Justice.

This appeal is from an inverse or reverse condemnation action in which the Department of Natural Resources appeals from a judgment awarding Stearns damages for the taking of the Stearns property.

Stearns has filed a cross-appeal seeking a higher prejudgment interest.

The trial judge in a pretrial order found that there was a taking as of June 25, 1975, and the jury trial was then limited to the question of damages. The jury verdict was for $6.7 million against the Commonwealth and the trial judge held the Commonwealth liable for prejudgment and post-judgment interest, bringing the total award to $9,878,554.02.

The principal and threshold issue is whether the trial judge committed reversible error in finding that the Wild Rivers Act affected a legally compensable taking of the Stearns property.

In 1972, the Kentucky General Assembly enacted the Wild Rivers Act, which was codified as KRS 146.210 et seq. The acts included a part of the Big South Fork of the Cumberland River in McCreary County in the Wild Rivers system. In 1973, the Department of Natural Resources developed general but imprecise boundary maps. This Court held that these maps did not meet the statutory requirement of designating the boundaries. *Commonwealth, Dept. of Natural Resources & Environmental Protection v. Stephens*, Ky., 539 S.W.2d 303 (1976).

In 1974, Rock Creek, in McCreary County, was included by the legislature in the Wild Rivers system and general boundary maps were prepared for that area. Between 1973 and 1975, the department developed informational brochure on fishing and canoeing, circulated literature on activities which were prohibited, had two staff inspectors place signs along the wild river streams welcoming the public to the area, and making other inspections of the region.

In 1974, the Department obtained a restraining order in Franklin Circuit Court which ultimately led to the decision in *Stephens, supra*. In 1975, the Department obtained a restraining order against Western Reserves Oil Company for violations along Rock Creek. As a result of the court decisions in those actions, the legislature adopted Department proposed amendments to become effective June 19, 1976.

On April 7, 1976, prior to the effective date of the amendments, the Department received a letter from Bob Gable, Chairman of the Board of Stearns, indicating that his company was to begin a large-scale, multiple-use land development, clear cutting of timber, construction of vacation and retirement homes, deep mining, strip mining, extension of their railway system, oil and gas drilling and new road construction. This amounted to an inauguration of every activity that was then prohibited in the Wild Rivers area. It was an obvious challenge to the right of the Commonwealth to proceed with the Wild Rivers program. On April 15, 1976, the Department issued an administrative order to abate pursuant to KRS 224.071, directing Gable to discontinue any threatened action until a hearing could be held before a hearing officer on April 22. Before the hearing, Stearns obtained a restraining order enjoining the Commonwealth from proceeding with any hearing on the abatement order. On April 23, the Franklin Circuit Court granted a temporary injunction against the Commonwealth enjoining them from otherwise interfering with any activity or operation by Stearns in connection with the timbering and/or foresting of trees.

On May 25, 1976, Stearns filed this inverse condemnation suit. The 1976 amendments became effective June 19. On July 2, this Court rendered the decision in *Stephens*, holding that there can be no violation of the Wild Rivers Act until the stream area is designated. On July 22, the Commonwealth formally published maps designating the boundaries of the Wild Rivers Act consistent with the statutory amendments.

On January 30, 1981, the trial judge found the Commonwealth to be liable for taking and damaging the Stearns property in violation of the Kentucky and United States Constitutions. This appeal followed.

This Court reverses the judgment because the trial court erred in finding the Wild Rivers Act had taken the Stearns' property.

The circuit court pretrial order was clearly erroneous and is not supported by the evidence. In *Stephens, supra*, this Court held that until the stream areas were designated, the Commonwealth could not enforce the prohibitions of the act against any property owner. Consequently, there was no taking of the Stearns' property as a matter of law.

■ The Stephens case was the first exercise by the Commonwealth of any legal action against any property owner. The injunction against Western Reserve Oil Company, a lessee of Stearns, was set aside by this Court following the holding in *Stephens*. The order to abate of April 15, 1976, was enjoined by the circuit court. The passage of the Wild Rivers Act was not a taking of the property. The enforcement of the act could not have occurred until at least July 22, 1976, when the boundaries were officially designated by proper regulation. Accordingly, the trial court committed reversible error and was clearly erroneous as a matter of law when it found the date of the taking to be June 25, 1975.

■ The question of a legal taking is crucial. A taking is generally defined as the entering upon private property and devoting it to public use so as to deprive the owner of all beneficial enjoyment. Private property shall not be taken without just compensation. *See* 26 Am.Jur.2d, *Eminent Domain*, § 157.

■ This case involves what is referred to in the law as a reverse, or inverse, condemnation. Inverse condemnation is the term applied to a suit against a government to recover the fair market value of property which has in effect been taken and appropriated by the activities of the government when no eminent domain proceedings are used. The United States Supreme Court has been unable to develop any definite guidelines for determining when the best interests of justice require compensation for property taken. *See Penn Central Transportation Co. v. New York City*, 438 U.S. 104, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978). That court, however, has identified several factors which are relevant to ascertaining whether an act amounts to a taking. Such elements are (1) the economic impact of the law on the claimant, (2) the extent to which the regulation has interfered with distinct investment-backed expectations, (3) the "character" of the governmental action, that is whether the action is a physical invasion versus a public program adjusting the benefits and burdens of economic life to promote the common good, (4) what uses the regulation permits, (5) that the inclusion of the protected property was not arbitrary or unreasonable, and (6) that judicial review of the agency decision was available.

■ In Kentucky, the Wild Rivers Act, if it had been fully executed, could have been a taking. Stearns used the area for access and presuming a showing that the present access was inadequate, the company would have been cut off from the coal because no new roads could be built. No mining was allowed and Stearns was not permitted to clear-cut timber. These prohibitions would greatly interfere with the company's operation and impair its financial interests. The land had to remain practically untouched and in a primitive natural state. Here even though the law gave authority for such action by the state, there was no enforcement which deprived Stearns of any valuable right. The only attempts at enforcement were totally thwarted by judicial intervention. Consequently, there was no taking.

The evidence that signs were posted welcoming the public to the Stearns property indicates that a valid action based on trespass might have been pursued by Stearns. KRS 381.231. It seems this behavior by the Commonwealth was improper, and injunctive relief could have been the appropriate remedy under this situation. *Keck v. Hafley*, Ky., 237 S.W.2d 527 (1951).

The authorities used by Stearns to support its contention that a taking had occurred are distinguishable. In *Pennsylvania Coal Company v. Mahon*, 260 U.S. 393, 43 S.Ct. 158, 67 L.Ed. 322 (1922), a

landowner sought and obtained an injunction against Pennsylvania Coal which, pursuant to a statute, prevented the company from mining coal under the land. Contrary to our situation, the coal company was actually prevented from mining. *Hughes v. Washington,* 389 U.S. 290, 88 S.Ct. 438, 19 L.Ed.2d 530 (1967), dealt with Federal law controlling who had title to accretion of land caused by the oceans. No taking issue was discussed in the main opinion. This case is really not relevant authority. *Davis v. Newton Coal,* 267 U.S. 292, 45 S.Ct. 305, 69 L.Ed. 617 (1925), is factually distinguishable because the Federal government, acting through the fuel administration, actually seized 113 railroad cars of coal.

In other cases, when serious questions concerning government action were presented, the landowner was subjected to more abusive government intervention than here. In *United States v. Causby,* 328 U.S. 256, 66 S.Ct. 1062, 90 L.Ed. 1206 (1946), the U.S. Supreme Court held there was a taking because airplanes flew so low from an adjacent military airfield that the land became uninhabitable. In *Penn Central, supra,* the court held there was no taking when the landowner was prohibited from building an addition to Grand Central Station. The conduct in our case, although arbitrary, does not rise to a legal taking. A careful examination of the authorities presented by all parties to this action indicates that a majority of the decisions involving an inverse taking involve acts which completely frustrate the landowner's rights and deprive him of the use of his property. That is not the situation here.

■ The original law itself is reasonable and the purpose of the law is within the overall scope of a public purpose. *See, Moore v. Ward,* Ky., 377 S.W.2d 881 (1964). The valid exercise of police power which may result in expense or loss of property is not a taking of property without just compensation. *Blancett v. Montgomery,* Ky., 398 S.W.2d 877 (1966).

■ It should be noted that the police power is limited as stated in *Pennsylvania Coal Co. v. Mahon, supra.* The regulation is authorized only if it does not go too far, then it will be recognized as a taking. The strong public desire to improve society is not enough to avoid the payment to property owners who are deprived of their property. The valid exercise of police power is not unconstitutional merely because it deprives a property owner of the most beneficial use of the property. *Goldblatt v. Town of Hemstead,* 369 U.S. 590, 82 S.Ct. 987, 8 L.Ed.2d 130 (1962).

Here the evidence is very strong that Stearns has made substantial beneficial use of the property. During the period of the alleged taking, there have been continued timber operations, a 5-year oil lease on over 9,000 acres, a 10-year lease to the Commonwealth of 10,000 acres for public hunting and wildlife management. A lease of 37,000 acres to the Western Reserve Oil Company, and extensive logging operations. Stearns has not suffered an excessive interference with the legally protected use of the land that has been generally designated as a Wild River area, and the land has not been destroyed nor has an additional burden been placed upon the maintenance of that use.

■ The sale of 12,000 acres by Stearns to the United States was relevant and material to the possible set-off against any judgment awarded to Stearns. Stearns had already been paid approximately $5.6 million for part of the land in question by the Federal government in 1978, nearly three years prior to the final judgment. The state could never acquire any interest in lands conveyed to the United States because a state cannot take by eminent domain land owned by the United States for governmental purposes. The Federal government does not have to comply with the Wild Rivers Act. Consequently the government did not suffer any damages nor was the sale inhibited. Stearns cannot reasonably argue that the sale price was diminished as a result of the existence of the Wild Rivers Act.

The award of prejudgment and post-judgment interest based on KRS 360.040 was clearly erroneous. *Department of Transportation v. Lamb*, Ky., 549 S.W.2d 504 (1976). This judgment under an inverse condemnation proceeding does not bring the case within the rules on interest pursuant to an exercise of the power of eminent domain. At no time prior to or during the pendency of this action was Stearns out of possession or control of the property. There was no physical taking of the land. Unless and until the condemning authority takes possession of the property, the condemnee is not entitled to interest. *Foster v. Sanders*, Ky.App., 557 S.W.2d 205 (1977).

We have not found a single inverse condemnation case from any jurisdiction, including Kentucky, which supports an award of interest against a government.

The trial judge's decision to charge the Commonwealth court costs is reversed only because we have determined there was no taking. The assessment of court costs against the condemning authority is constitutionally necessary in order to insure that complete and just compensation is received by the property owner. *Barker v. Lannert*, 310 Ky. 843, 222 S.W.2d 659 (1949), holds that court costs in any part of a condemnation proceeding cannot be assessed against the individual property owner because such an expense would reduce the just compensation paid and consequently violate Section 242 of the Kentucky Constitution. Inverse condemnations must be treated in the same fashion as a straight condemnation by eminent domain under our constitution. *Keck v. Hafley, supra.* Here the property owner brought the suit as an inverse condemnation. Our decision that there was no taking requires the property owner to bear his own costs.

The argument by the Commonwealth that unless it consents to the assessment of costs it cannot be required to pay such costs is unconvincing. Usually the costs in a condemnation proceeding whether it be inverse or by eminent domain do not mean mere filing fees, but rather involve expensive expert witnesses' charges which are necessarily occasioned by the government's actions. The decision in *Department of Revenue v. D & W Auto Supply, Inc.*, Ky.App., 614 S.W.2d 542 (1981) and *Department for Human Resources v. Paulson*, Ky.App., 622 S.W.2d 508 (1981), can be reconciled to the extent that court costs may be charged against the state as permitted by law. That portion of *D & W Auto Supply, supra*, which indicates that the Commonwealth is authorized to pay costs only if it agrees to do so is overruled because it conflicts with Section 242 of the Kentucky Constitution and the decision in *Barker, supra.* This situation is controlled by *Barker*, and the Commonwealth must pay costs when a taking occurs either in eminent domain proceedings or an inverse condemnation proceeding. In this case, because we have determined that there was no taking, costs should not have been assessed against the Commonwealth. To the extent that KRS 453.010 conflicts with Section 242 of the Kentucky Constitution, the statute is invalid.

We have fully considered the other voluminous arguments presented here, but in view of our decision, there is no reason to review them at this time. The 1976 amendments are not subject to review in this case because they did not become effective until June 19, 1976, several months after the filing of this suit.

It is the holding of this Court that the passage of the Wild Rivers Act and the conduct of the Commonwealth in attempting to enforce its provisions, did not constitute a legally compensable taking of the property of Stearns by inverse or reverse condemnation. The judgment of the trial court is reversed.

STEPHENS, C.J., and GANT, VANCE and WINTERSHEIMER, JJ., concur.

AKER, LEIBSON and STEPHENSON, JJ., dissent.

LEIBSON and STEPHENSON, JJ., dissent by separate opinions.

AKER, J., joins in STEPHENSON'S dissent.

LEIBSON, Justice, dissenting.

Respectfully, I dissent. The decision to deny the Stearns Company just compensation for the taking of its property is a miscarriage of justice, an indefensible injury to this property owner and, as a precedent, a serious threat of the abuse of state power against all property owners.

It is an inescapable fact that the Kentucky Wild Rivers Act, both as originally enacted in 1972 and as reenacted in 1976, substantially deprives Stearns of the commercial use of its property for the benefit of the general public, resulting in a significant diminution in the value of the property. I see no difference between this taking and any other taking for a public easement. A property owner continues to hold fee simple, but has lost many of the rights that were a concomitant of such ownership.

The only question is whether the taking should be classified as an inverse condemnation or an exercise of the state's police power. Both the nature of the taking and the Act itself answer this question in Stearns' favor:

"Nothing in KRS 146.200 to 146.360 shall be construed to deprive a landowner of the fee simple title to or lesser interest in his property without just compensation." KRS 146.280(1)

As Justice Palmore said in his concurring opinion in *Commonwealth ex. rel. D.N.R. and E.P. v. Stephens*, Ky., 539 S.W.2d 303, 309 (1976), speaking of the 1972 Act:

"The restrictions contained in KRS 146.-290, though probably intended to become effective upon designation of the boundaries pursuant to KRS 146.250, so substantially reduce the owners' private property rights that they (the restrictions) exceed the traditional scope of the police power and therefore cannot take effect unless and until the owners are paid just compensation for the loss of those rights."

As Justice Jones said in his dissenting opinion in the same case:

"The legislative scheme to preserve the beauty in the designated areas was never intended to be accomplished by imposing the burden of the cost and a restriction of use on the owners of property within the designated area." *Id.* at 310.

*Stephens, supra,* answers the question "whether the police power of the state could be stretched so as to destroy previously existing rights of property and contract" in the area covered by the Wild Rivers Act. It holds that the police power of the state does not extend to cover the taking contemplated by the Act. It adopts as the applicable principle the following language from *Pennsylvania Coal Co. v. Mahon*, 260 U.S. 393, 43 S.Ct. 158, 67 L.Ed. 322 (1922): "The general rule at least is that while property may be regulated to a certain extent, if regulation goes too far it will be recognized as a taking. * * * We are in danger of forgetting that a strong public desire to improve the public condition is not enough to warrant achieving the desire by a shorter cut than the constitutional way of paying for the change. * * *"

The 1976 amendment to the Wild Rivers Act does not change the essential character of the Act. It remains a use of private property for public benefit in a manner that prevents commercial use of the property. As shown by the facts in this case, the section of the Act authorizing permits for commercial use is largely illusory. Strip mining of coal is still completely prohibited. Deep mining will be in direct conflict with the Act since it is clear that no management plan permitting it would be "consistent with the purposes of the Act."

In fact, no management plan has been developed under which to apply. Secretary Bell of the Department for Natural Resources and Environmental Protection testified in his deposition on June 24, 1977 that he would not allow deep mining or strip mining or road building or construction of buildings in a Wild Rivers area.

Since Secretary Bell knew that his Department had been sued for twenty million dollars when he testified, his testimony must be given great weight.

The action by the Department in printing brochures inviting public use, putting up signs and surveying the area effectively deprived the owner of commercial use of this property. It is true that the boundaries of the area were not "officially" designated by the Department until July 21, 1976, after the 1976 amendment which purports to allow a system of permits, and that *Stephens, supra,* refers to the 1972 Act as enabling rather than confiscatory until such time as these boundaries have been officially designated.

The majority opinion states, "This Court held (in *Stephens*) that these maps did not meet the statutory requirement of designating the boundaries." Actually, it appears from the decision in *Stephens* that in that case *both* sides "advised (the Court) that the Secretary for the Department for Natural Resources has not as yet determined the boundaries of the stream area of the location with which we are concerned." 539 S.W.2d 308. Further, the opinion states:

> "The landowners' motion to dismiss called to the trial court's attention the fact that no boundary designation had been made ..." 539 S.W.2d 308.

The opinion in *Stephens* seems to proceed unaware that a designation had in fact taken place, that all that remained was the official imprimatur.

We should not decide this case on any point so transparently hypocritical as the cosmetic changes effected by the 1976 Act. The trial court reached through the facade to the operative facts in this case and we should do the same. The acts of the Department preparatory to officially designating the area from which commercial use was prohibited and in taking control of the property for public use went much too far to be ignored. The majority opinion designates posting signs inviting public use as "improper," but not evidence of a taking. I deem it confiscatory.

The majority concludes that "(t)he conduct (of the state officials and employees) in our case, although arbitrary, does not rise to a taking." These officials and employees were not arbitrary. They were simply carrying out their responsibilities as the Act permitted and as assigned to them. In doing so they were creating a public easement on Stearns' property for which Stearns was entitled to just compensation. The then Secretary for the Department of Natural Resources and Environmental Protection testified that his "concept" of carrying out the Act was "freezing" all commercial activity with the Wild Rivers area indefinitely without compensating private owners.

The sale of a portion of that property to the Federal government was presumably a sale at its fair market value, as diminished in view of the Wild Rivers Act as now in place. It is not necessary that the state "*completely* frustrate the landowner's rights and deprive him of the use of his property," as written in the majority opinion, before the landowner is entitled to compensation. He is entitled to such compensation when the state *partially* frustrates his rights and deprives him of the use of his property, to the extent he has been deprived.

As stated by the trial court in deciding this case:

> "In essence, there comes a time when the interference and control by government of private property has existed for such a period of time that fairness and justice require that government pay for the damages to that property rather than be permitted to decide, unilaterally, that the price for its actions is too high." Memorandum Opinion, J.B. Johnson, Jr., Judge, McCreary Circuit Court.

Following this decision the trial court was asked to "select a specific date of the taking." See Pre-trial Order, J.B. Johnson, Jr., Judge, McCreary Circuit Court, dated October 20, 1981. The trial court then held:

> "Upon consideration of the arguments of both parties, it is the opinion of the Court

that while selecting the date of the taking is somewhat artificial, it would appear from the facts that were proved on the liability aspect of this case that the full impact of the enforcement of the Wild Rivers Act had culminated at least by June 25, 1975, the date the Commonwealth enjoined Western Reserves, a lessee of Stearns from drilling gas wells or from engaging in any other activities within the boundaries of the Rock Creek Wild River. Thus, the Court finds that the date of the taking for the purposes of the trial on damages is June 25, 1975."

The decision of the trial court was well reasoned and in conformity with the law. We should affirm.

STEPHENSON, Justice, dissenting.

I dissent from so much of the majority opinion as reverses the entire case and effectively dismisses the complaint. Without going into detail, I am of the opinion there are portions of the surface and minerals that were taken by the Commonwealth of Kentucky. I would not reverse the entire case.

AKER, J., joins in this dissent.