**Roland D. FOSTER and Venetia C. Foster, his wife, Petitioners,**

v.

**Honorable C. V. SANDERS, Judge, Bullitt Circuit Court, Fifty-Fifth Judicial Circuit, Respondent.**

Court of Appeals of Kentucky.

July 8, 1977.

Respondent's Motion for Reconsideration Denied Sept. 28, 1977.

Petitioner (Appellee) Motion to Dismiss Appeal Granted by Supreme Court Nov. 15, 1977.

Norman R. Lemme, Pike, Lemme & Conway, Shepherdsville, for petitioners.

Jean A. McMillen, Dept. of Transp., Bureau of Highways, Louisville, George Geoghegan, III, Asst. Atty. Gen., Frankfort, for respondent.

Before GANT, PARK, and WILHOIT, JJ.

PARK, Judge.

The petitioners, Roland D. Foster and Venetia C. Foster, are the owners of land which the Commonwealth of Kentucky seeks to acquire for highway purposes in a condemnation proceeding presently pending in the Bullitt Circuit Court.[1] Mr. and Mrs. Foster seek a writ of mandamus against the presiding judge of the Bullitt Circuit Court, contending that their property is being taken without due process of law because of the procedures being followed in the condemnation case.

A shopping center has been developed on a part of the land owned by the Fosters. The record in this original proceeding does not define with any clarity the various leases, mortgages and other interests in the Fosters' property. Nevertheless, as a result of stipulations made by the parties during oral argument before this court, it is possible to give a general outline of the development of the shopping center. The major tenant, Houchens, Inc., holds a lease on a part of the shopping center. An affiliated corporation, Houchens Industries, Inc., asserts mortgage liens against portions of the shopping center. (Houchens Industries, Inc. apparently provided the construction money for the supermarket building leased by Houchens, Inc.) Other portions of the shopping center are leased to various so-called minor tenants. A portion of the property owned by Mr. and Mrs. Foster is undeveloped land which is not in any way utilized in the shopping center operation. A vendor's lien and other mortgage liens are asserted against various portions of the Fosters' property.

The condemnation proceeding is being prosecuted pursuant to the Eminent Domain Act of Kentucky, KRS 416.540 to 416.670. Mr. and Mrs. Foster, all of the lessees in the shopping center, and all of the holders of liens were joined as defendants in that proceeding. The commissioners appointed by the circuit court made an award of $976,145.00. This award represented the commissioners' finding of the difference between the fair market value of all of the property owned by Mr. and Mrs. Foster immediately before the taking and so much of their property as remains immediately after the taking. The commissioners did not make a separate valuation of each portion of the shopping center property, nor did the commissioners appraise the shopping center property separate from the undeveloped land. The Commonwealth has paid the sum of $976,145.00 into court. An interlocutory judgment has been entered by the circuit court pursuant to KRS 416.610, granting the Commonwealth the right to take immediate possession of the property sought to be condemned.

In the absence of an agreement by the defendants with respect to the division of $976,145.00 deposited by the Commonwealth with the court, the circuit court has refused the Fosters' request that the fund be paid to them or applied to the lien debts. As some of the lessees and lienholders have

---

1. *Commonwealth of Kentucky, Department of Transportation, Bureau of Highways v. Roland* D. Foster, et al., Civil Action No. 5026, Bullitt Circuit Court.

objected to any payment to the Fosters or to other lien holders, the circuit court has taken the position that no portion of the fund should be paid out until the respective interests of the defendants in the award is determined by a jury.

Mr. and Mrs. Foster point out that interest continues to accrue on the lien debts during the pendency of the condemnation proceeding while their rental income from the shopping center will be terminated when the Commonwealth takes possession of the property pursuant to the interlocutory judgment. The Fosters' dilemma is compounded by the fact that the circuit court has refused to make any temporary investment of the $976,145.00 fund being held by the court. Consequently, the fund will earn no interest for the defendants, and the Commonwealth will deny any liability for interest on the amount of the commissioners' award for the period of time between the date of the deposit and the date of the final judgment following a jury trial. See KRS 416.620(5); *Commonwealth, Department of Highways v. Citizens Ice and Fuel Co.*, Ky., 394 S.W.2d 903 (1965). The Fosters assert that they are being denied due process of law. We agree.

█ In discussing the requirement that just compensation be paid for any private property taken for public purposes, the starting point must be sections 13 and 242 of the Kentucky Constitution. Section 13 provides that no person's property may be taken for public use "without just compensation being previously made to him." The requirements of section 13 are amplified by section 242 of the Kentucky Constitution which provides:

"Municipal and other corporations, and individuals invested with the privilege of taking private property for public use, shall make *just compensation* for property taken, injured or destroyed by them; which compensation *shall be paid before such taking, or paid or secured,* at the election of such corporation or individual, *before such injury or destruction.* The General Assembly shall not deprive any person of an appeal from any preliminary

assessment of damages against any such corporation or individual made by Commissioners or otherwise; and upon appeal from such preliminary assessment, the amount of such damages shall, in all cases, be determined by a jury, according to the course of the common law." (emphasis added)

In construing sections 13 and 242, this state's highest court has held that the owner must be paid or tendered compensation before his property may be "taken" for a public use. If the property is only "injured or destroyed" rather than "taken", the damages need only be paid or "secured." *P. Bannon Pipe Co. v. Illinois Central R. Co.*, 203 Ky. 659, 262 S.W. 1110, at 1112–13 (1924); *Williams v. Wedding*, 165 Ky. 361, 176 S.W. 1176, at 1182 (1915).

Although the condemnor must pay or tender compensation to the owner prior to taking possession of the property being acquired, neither section 13 nor section 242 requires that possession be delayed until there has been a final adjudication of the amount of compensation. Section 242 recognizes that there may be a preliminary assessment of the amount of compensation to be paid with either party having their right to secure a final assessment of the amount of compensation by a jury. The drafters of the present constitution did not intend that public projects be delayed until a jury had made the final determination of the amount of compensation to be paid. Consequently, sections 13 and 242 have been construed to require that the condemnor need only pay or tender to the owner the amount of the preliminary assessment of compensation as a prerequisite to taking possession of the land condemned. *Barker v. Lannert*, 310 Ky. 843, 222 S.W.2d 659 (1949). Under the Eminent Domain Act, the condemnor is entitled to take possession of the property at such time as the amount of compensation awarded by the commissioners is paid to the owner or to the clerk of the court. KRS 416.610(2)(c).

█ Kentucky's constitutional requirement that compensation be paid prior to the taking of private property by eminent do-

main is consistent with the general rule allowing interest in the event that there is delay in the payment of compensation beyond the date of taking. As stated in 3 *Nichols' The Law of Eminent Domain*, § 8.63 (3rd ed. 1976):

> "The theory of the law is that when land is taken by eminent domain or when it is injured in such a way as to create a constitutional right to damages, payment for the land thus affected should be coincident with the taking or injury, and, if for any reason payment is postponed, the right to interest from the time that payment ought to have been made until it is actually made follows as a matter of strict constitutional right."

The cases supporting this rule are collected in an annotation, 96 A.L.R. 18, at 150–206 (1935), supplemented in 36 A.L.R.2d 337, at 413–71 (1954). The Eminent Domain Act recognizes the owner's right to interest in the event of delay in the payment of compensation beyond the date of taking. If the final amount awarded to the owner as compensation is greater than the amount of the commissioners' preliminary award, the condemnor is liable for interest on the amount of the increase from the date the condemnor takes possession. If the original commissioners' award is greater than the amount of compensation finally awarded, the owner is liable for interest on such excess unless the owner refused to accept payment of the preliminary award or declined to withdraw the amount deposited in court. KRS 416.-620(5). Compare *Commonwealth, Department of Highways v. Whitledge*, Ky., 406 S.W.2d 833 (1966), with *Sloan v. Commonwealth, Department of Highways*, Ky., 405 S.W.2d 294 (1966). If the condemnor pays the amount of the commissioners' award to the clerk of the court, the condemnor has no further liability for interest on that sum. *Commonwealth, Department of Highways v. Citizens Ice and Fuel Co., supra*. The clerk of the court holds the award subject to the orders of the court. KRS 416.630.

Because the owner has lost the right of possession to the property being taken upon the payment of the commissioners' award into court and because the owner has no claim to interest on the amount of the commissioners' award, the legislature, in enacting the Eminent Domain Act, clearly contemplated that the owner may immediately withdraw the amount of the award. The only statutory exception to the owner's right to withdraw the award is set forth in KRS 416.640 which provides:

> "Where there are *conflicting claimants* to the land sought to be condemned and all such parties are before the court, each *claimant*, for the purposes of the condemnation proceeding only, shall be deemed to be an owner, and the procedure for the condemnation of the land shall be as provided in KRS 416.550 to 416.670 except that, before the condemnor shall be entitled to take possession of the land, it shall be required to pay the compensation awarded therein to the circuit court clerk to be held for the benefit of, and paid over to such persons as may thereafter be determined to be entitled to receive it. In such cases, the claimants may have their rights determined in a separate action, but the filing of such action or its pendency shall in no wise stay or delay said condemnation proceedings." (emphasis added)

It must be emphasized that KRS 416.640 deals with situations in which there are "conflicting claimants" to the property being condemned. The statute does not deal with the situation in which there are multiple owners of different interests in the land being condemned and the dispute is over the *value* of the respective interests.

█ In the present case, if there is a genuine issue with respect to the priority or validity of certain liens upon the Fosters' property, then there would be "conflicting claimants" within the meaning of KRS 416.640. Until any such issues are finally determined, the portion of the commissioners' award attributable to the lien claims should be retained by the court. To the extent that there are genuine issues with respect to the lien claims, the trial court did not err in refusing to pay out the entire amount of the commissioners' award to Mr. and Mrs. Foster. Nor did the trial court err in refusing to pay specific lien claims.

A dispute over the priority or validity of liens would not justify the trial judge's refusal to place the sum of $976,145.00 at interest. There will be occasions when the commissioners' award is so small, or the time before resolution of the conflicting claims is so short, that the trial court will be justified in refusing to direct the clerk to place the award at interest. In the present case, the trial judge's refusal to place the sum of $976,145.00 at interest constitutes a clear abuse of discretion. When the Commonwealth takes possession of the property being condemned, Mr. and Mrs. Foster will lose the rental income from the property. At the same time, the interest on the lien debts against the property will continue to accrue. Considering the magnitude of the sum deposited by the Commonwealth, it is mandatory that the sum be placed at interest until such time as any genuine question of lien priorities can be resolved.

Although there may be a genuine dispute with respect to the priority or validity of the lien debts, there is no genuine issue with respect to the ownership of the various leasehold interests. With respect to the leasehold estates, the question is whether they have any compensable value under the principles laid down in *Commonwealth, Department of Highways v. Sherrod*, Ky., 367 S.W.2d 844, at 848–51 (1963). Neither the Commonwealth nor the commissioners have made any effort to allocate the award in accordance with the *Sherrod* case. In the absence of such an allocation, the lessees can not make an intelligent decision whether to file exceptions to the award as permitted by KRS 416.620. If no allocation of the award is made in accordance with the standards set forth in the *Sherrod* case, the lessees must necessarily file exceptions to the award. On the other hand, if an allocation is made, the lessee may be willing to accept the award thereby reducing the issues required to be tried before a jury.

The Fosters are in an even greater dilemma than the lessees. Their undeveloped land was valued with the shopping center property without any allocation being made between the two parcels. This procedure is directly in conflict with the holding in the *Sherrod* case that a leased parcel should be treated as an independent tract, separate and apart from the remainder of the owners' property which was unleased. Id., 367 S.W.2d at 852. The value of the undeveloped and unleased land owned by Mr. and Mrs. Foster could be readily determined by the commissioners. Nevertheless, the undeveloped property was not separately valued, and Mr. and Mrs. Foster have no way of knowing what part of the $976,145.00 is attributable to the undeveloped tract of land.

Under federal procedure, the condemnor's deposit of estimated compensation serves the same function as the deposit of the commissioners' award under Kentucky practice. In *United States v. 355.70 Acres of Land*, 327 F.2d 630 at 632 (3rd Cir. 1964), the court considered the validity of a lump sum deposit covering several parcels of land being acquired by the United States. The court held:

"In deciding what is just compensation for a public taking of private property, courts normally determine and award the fair value of the property at the time of taking. But usually the taking occurs at the beginning of the condemnation proceeding, while the award comes at the end. This means that there is likely to be a substantial period during which the owner has neither his land nor equivalent value in money. In such circumstances, just compensation must include, in addition to fair value at the time of taking, an award for the intervening deprival. To supply this essential element of just compensation, Congress has required that the United States pay 6 per cent interest upon the value at taking from that date until the award is made and paid. 40 U.S.C. § 258a.

"Alternatively, the same section authorized the United States to eliminate or minimize this interval of deprivation and the attendant necessity for compensation in the form of interest by making an advance estimate of value and paying that sum into court at the time of taking for

the immediate use of the owner or owners of the condemned land. * * *

"Where a single parcel is taken, a deposit of estimated compensation is obviously a tender of a specific sum in a way that makes it immediately available to anyone who can show clear title to that parcel. But rule 71A(b), Federal Rules of Civil Procedure, as promulgated in 1951, expressly authorizes the joinder of 'separate pieces of property, whether in the same or different ownership', in a single condemnation action. Such aggregation of takings does not alter the necessity that estimated compensation be explicitly tendered or readily calculable for each parcel individually in order that the deposit may have that characteristic of immediate availability which alone justifies the denial of interest between the taking and the ultimate award.

"A blanket estimate and deposit covering several parcels and not attended by allocation among them is not an effective tender of any sum for any parcel. * * As a practical matter, this meant that an ultimate determination of just compensation for each parcel was necessary before any owner could effectively claim a specific amount as his share of the deposit. In these circumstances, the unallocated sum was not a legally effective deposit within the contemplation of section 258a of Title 40 and, therefore, did not relieve the United States of its normal obligation to pay interest from the time of taking on the subsequent award."

The case before the United States Court of Appeals for the Third Circuit involved several parcels owned by different persons. Nevertheless, the principles set forth in that opinion are applicable to the facts of this case.

 While the Fosters are the fee owners of both the shopping center and the undeveloped land, recognition must be given to the fact that the shopping center was subject to a myriad of leases. So long as there is no allocation of the commissioners' award, the undeveloped property necessarily becomes involved in the controversy between the Fosters and their lessees arising out of the shopping center. Even when common ownership exists, if contiguous parcels are devoted to separate unrelated uses, they must be treated as separate tracts for valuation purposes. *Commonwealth, Department of Highways v. Rogers*, Ky., 399 S.W.2d 706 (1965). See also *Commonwealth, Department of Highways v. Sherrod, supra*; cf. *Jones v. Commonwealth, Department of Highways*, Ky., 413 S.W.2d 65 (1967); *Commonwealth v. Raybourn*, Ky., 359 S.W.2d 611 (1962); *City of Middlesboro v. Chasteen*, 285 Ky. 427, 148 S.W.2d 295 (1941). Since there was no allocation of the award between tracts devoted to separate uses, the payment of the $976,-145.00 award into court does not relieve the Commonwealth of its obligation to pay interest between the date it takes possession of the property and the date that ultimate compensation is determined and paid.

Not only should there be an allocation of the commissioners' award when there are separate tracts devoted to unrelated uses, there should also be an allocation of the award when there are separate interests in a single tract. For example, when a tract is subject to a lease, the value of the interest of the lessor and the value, if any, of the interest of the lessee can be readily ascertained by following the procedures set forth in the *Sherrod* case. When the interests of the lessor and the lessee can be readily determined, the commissioners' award should be allocated between them. In *Russian Orthodox Greek Catholic Church of North America v. Alaska State Housing Authority*, Alaska, 498 P.2d 737 (1972), different persons owned different interests in the property being condemned. Relying heavily on the decision in *United States v. 355.70 Acres of Land, supra*, the Alaska Supreme Court held that the condemnor was under a duty to allocate a lump sum deposit between "readily recognizable separate interests" in the property being taken. The court held that an owner is entitled to interest from the date of taking if, due to no fault of his own, he is unable to withdraw his share of the deposit because the condemnor made a lump sum deposit when

it was feasible to allocate the deposit among the separate interests.

█ If the separate interests of different persons in a single tract can be readily determined in accordance with the rules laid down in the *Sherrod* case, then the commissioners' award should be allocated among the respective interests. On the other hand, the interests in a tract of land may be so numerous and complex that the owners can be deemed to be "conflicting claimants" within the meaning of KRS 416.640. In such cases, there is no burden on the condemnor to have the commissioners' award allocated among the many complex conflicting interests. The condemnor is not liable for interest because of the delay required for a judicial determination of the share of each owner in the award. See *United States v. 53¼ Acres of Land,* 176 F.2d 255 (2d Cir. 1949), second appeal, *United States v. City of New York,* 186 F.2d 418 (2d Cir. 1951). Based upon the record before the court in this proceeding, this court is unable to determine whether it is feasible to allocate the commissioners' award among the various interests in the shopping center, or whether the interests in the shopping center are so complex and interrelated that they should be deemed to be conflicting within the scope of KRS 413.-640. In determining whether allocation is feasible, the trial court must necessarily have some discretion. This court will not attempt to exercise the trial court's discretion, but it should be pointed out that an allocation must ultimately be made by the jury in awarding compensation. In most cases, it will be no more difficult for the commissioners to allocate their award than it will be for the jury to make an allocation in its verdict.

If the trial court determines that allocation is feasible, then the order appointing the commissioners should provide the standards to be followed by the commissioners in making their award. For example, if the award must be allocated between lessor and lessee, the order appointing the commissioners and the form for the commissioners' report should be substantially the same as the instructions and form verdict submitted to a jury under the principles set forth in the *Sherrod* case. The validity of an interlocutory judgment granting the condemnor possession of the property and the validity of the final judgment would not be affected by an erroneous determination that it was not feasible for the commissioners to allocate their award among the separate interests being taken. cf. *Commonwealth, Department of Highways v. Johnson,* Ky., 403 S.W.2d 691 (1966). If the failure to allocate the commissioners' award was error, the owners can be awarded interest as compensation for denial of their right to withdraw their respective shares of the commissioners' award.

If the commissioners' award is allocated among the respective interests in the property being taken, each owner will have the right to withdraw his respective share of the award. In addition, each owner will be in a position to make an intelligent decision whether to file an exception to the award. If the amount finally awarded by the jury for any interest is less than the amount allocated by the commissioners' award, the owner of that interest would be liable for any such overpayment plus interest on the amount of the overpayment.

█ If the jury award to the owner of an interest (such as a lessor) is greater than the amount that was allocated to him in the commissioners' award, the condemnor will be liable to that owner for the deficiency plus interest on the amount of the deficiency. This is true even though there may have been an overpayment to the owner of another interest (such as a lessee) which cannot be recovered because that person has become judgment proof. The risk of loss of overpayment to the owner of a particular interest must fall on the condemnor. The problem is created by the condemnor's election to take possession of the property being condemned prior to a final determination of just compensation. *Socony Mobil Oil Co. v. State,* 248 Ind. 680, 230 N.E.2d 530 (1967). Since the condemnor is required to pay the commissioners' award prior to final judgment only as a means of obtain-

ing immediate possession, the risk of loss should fall upon the condemnor rather than the other owners who had no choice in the matter.

■ Since the condemnor must bear the risk of loss in the event of overpayment, the condemnor should have the right to question the amount allocated to the owner of a particular interest. In such a case, the trial court may deny the owner the right to withdraw the full amount of his share of the award. If the owner of a particular interest is denied the right to withdraw the full amount of the commissioners' award allocated to him because of the condemnor's objection, then interest would be allowed on that part of the final award in excess of the amount the court permitted the owner to withdraw. *United States v. 53¼ Acres of Land, supra* ; *United States v. Certain Land in City of St. Louis*, 41 F.Supp. 809 (E.D.Mo.1941), aff. sub nom. *O'Donnell v. United States*, 131 F.2d 882 (8th Cir. 1942).

In setting forth procedures to be followed in the condemnation of property in which there are multiple ownership interests, this court has been guided by the constitutional requirement that the owners be awarded just compensation. However, this court does not intend to suggest that the procedures set forth in this opinion represent the only constitutional method for awarding just compensation to the owners of multiple interests in a single tract of land. The problem has not been considered by the legislature, and the legislature is free to enact such procedures as it deems fair in accordance with the mandate of sections 13 and 242 of the Kentucky Constitution. Furthermore, the trial court must be vested with a substantial degree of discretion in such cases because it is impossible for this court to predict the particular interests which may be involved in future eminent domain proceedings.

■ Mandamus will ordinarily not issue in eminent domain proceedings for the purpose of controlling matters of procedure. In most cases, there will be an adequate remedy by appeal. In the present case, mandamus is justified. The trial court's failure to place the award of $976,145.00 at interest during the pendency of the case made it certain that some party to the proceeding, whether it be the Commonwealth or the defendants, would sustain a substantial loss. There would be no adequate remedy by appeal.

For the foregoing reasons, the petition for mandamus is granted. The respondent is directed to reappoint commissioners to value the land being taken; to direct the commissioners to value separately parcels not united in ownership and use; to determine whether it is feasible to allocate the amount of the commissioners' award with respect to the shopping center in accordance with the principles in the *Sherrod* case, and, if so, to instruct the commissioners accordingly; and to place at interest any amount of the commissioners' award which is not distributed to the defendants in the pending condemnation proceeding. Any conflict respecting lien claims should be resolved in a summary manner. The liens should be paid as soon as possible so that the owners are not burdened with further interest payments after losing the right to the income from the property. The commissioners should, of course, be instructed to determine the fair market value of each tract without regard to the different interests therein. Only after the fair market value of a tract is determined should the commissioners make any attempt to allocate their award among the owners of the various interests in accordance with the rule in the *Sherrod* case.

All concur.