Betty **HUNSAKER** and Peggy **Greer, Appellants**

v.

**COMMONWEALTH** of Kentucky, DE-PARTMENT OF TRANSPORTA-TION, DEPARTMENT OF HIGH-WAYS, Appellee.

No. 2005–SC–000974–DG.

Supreme Court of Kentucky.

Nov. 21, 2007.

James W. Craft II, Whitesburg, KY, for Appellants.

Phillip Wicker, Elizabethtown, KY, for Appellee.

Opinion of the Court by Justice SCHRODER.

The issue in this condemnation case is the liability, if any, of a substituted party for the refund due to the Commonwealth, for an overpayment, pursuant to KRS 416.620. We agree with the Court of Appeals that a substituted party stands in the shoes of the original party, with the benefits as well as the detriments. Hence, we affirm.

This condemnation proceeding originated in the Letcher Circuit Court on October 20, 1993, under KRS 416.540 through KRS 416.670 and KRS 117.081, to obtain a right of way for the construction of Jenkins Bypass, U.S. Highway 23. At that time, the property was owned by Mildred Hunsaker, subject to a bank mortgage. After a series of plan changes and commissioner appointments, the trial court (in 1996) entered an interlocutory order granting possession to the Commonwealth and setting the property value at $657,782.50, the money to be paid into court by the Commonwealth. The order also authorized Mildred and the mortgagee to withdraw the fund, which they did, leaving only Mildred as a defendant.

The Commonwealth filed exceptions to the commissioner's report, claiming that the evaluation was excessive. The matter then again languished for years without resolution. In the interim, Mildred conveyed her interest in the property to her daughters, Betty Hunsaker and Peggy Greer (in 1999). Mildred died on March 26, 2001, and on November 8, 2001, an agreed order was entered substituting Betty Hunsaker and Peggy Greer for Mildred Hunsaker. On December 19, 2002, the case finally proceeded to trial on the issue of damages. The sisters, Betty and Peggy, claimed the value of the land taken was 1.2 million dollars. The jury, however, set damages at only $300,000—substantially less than the amount already paid by the Commonwealth. The court's final order and judgment required Betty and Peggy to pay to the Commonwealth the excess which Mildred had received, with interest, pursuant to KRS 416.620 (condemnor entitled to judgment against owner for amount of decrease in compensation awarded). Apparently, Mildred had spent all of the monies received.

The sisters' post-trial motions were denied and the case was appealed to the Court of Appeals. On appeal, Betty and Peggy argued that they should not be required to pay, as they had not received any of the money disbursed to Mildred, and as the payment to Mildred had occurred before they acquired the property or became parties to the action. The Court of Appeals, affirming, found the decision in *Citizens Bank & Trust Co. v. McEuen*, 281 Ky. 113, 134 S.W.2d 1012, 1014 (1939), to be controlling: as a general rule, when a party is substituted for another party, he "takes up the litigation with all of its benefits and with all of its burdens just where the predecessor dropped it[.]"

Betty and Peggy also argued on appeal that they were relieved from liability because there was no privity between them and Mildred. The Court of Appeals declined to review that argument because it

had not been presented to the trial court. The sisters also argued that the Commonwealth should have named the Estate of Mildred Hunsaker or attempted to collect the debt from the estate rather than from the substituted parties. Again, the Court of Appeals declined to address the issue because it was not raised before the trial court.

On appeal to this Court, the sisters argue that they are not liable for the overpayment because Mildred received the money, not them; that the Commonwealth should have gone after Mildred's Estate, not her heirs or grantees; and that there was no privity of estate between Mildred Hunsaker and the substituted parties.

We note that Betty Hunsaker and Peggy Greer were substituted by an agreed order[1] for Mildred Hunsaker. If the Commonwealth had proceeded against the heirs, or the estate, liability may have been limited to the value of the estate or to the amount inherited from Mildred. Mildred also had a son, who was a grantee of the property and who did not join in the substitution (CR 25.01). If the Commonwealth had proceeded against the sisters as grantees in the 1999 deed (CR 25.03), there may have been a question of privity or a question as to the validity of the deed *after* the trial court awarded possession and title to the Commonwealth. However, with an agreed order of substitution, these issues were not before the trial court. Of course, at the time of substitution, the sisters were expecting a judgment of around 1.2 million dollars. Substitution did not appear risky, but with a refund due, the exact nature of the rights and obligations of substitution become crucial.

We agree with the Court of Appeals' application of the general rule in the present case that the substituting party takes the litigation with all of its benefits and burdens. *McEuen,* 281 Ky. at 117, 134 S.W.2d at 1014.[2] *Hollon v. Rose,* 268 S.W.2d 641, 642 (Ky.1954), recognized an assignee of an interest in real estate may be made a party to suit involving the real estate (partition). More telling is *Works v. Winkle,* 314 Ky. 91, 234 S.W.2d 312 (1950), which involved an assignment of a right to recover *after* suit was filed. The Court held the assignee may, but does not have to, intervene. *Id.* at 316. In the case *sub judice,* the sisters chose to intervene and substituted themselves for their mother. Their argument was that they were the real parties in interest, which in effect concedes that there is privity. Having done so, they cannot now complain that they are not the real parties in interest, and that they only wanted the benefits but not the burdens.

Accordingly, the opinion of the Court of Appeals is affirmed.

All sitting. LAMBERT, C.J., ABRAMSON, CUNNINGHAM, MINTON, NOBLE, SCHRODER, JJ., concur.

SCOTT, J., dissents by separate opinion.

Dissenting Opinion by Justice SCOTT.

I must respectfully dissent from the majority opinion herein for three reasons. First, the opinion is premised upon moral grounds that greed justifies punishment. Yet, I find no evidence of greed in the record; just a defense by two daughters of their mother, Mildred Hunsaker's (Mil-

---

1. CR 25.01 provides for substitution in the event of the death of a party. *See also Levin v. Ferrer,* 535 S.W.2d 79 (Ky.1976). CR 25.03 provides for a substitution of parties where the original party transfers her interest.

2. *See also* 59 AM.JUR.2D *Parties* § 359 (2007).

dred), right to the commissioners' award of $656,782.50, which the record implies the mother had already spent.[1] Secondly, the majority believes the daughters, Betty Hunsaker (Betty) and Peggy Greer (Peggy), were hoping to collect a judgment in excess of the commissioners' award by introducing evidence of 1.2 million dollars in damages, and that they *had such a right*. This too is incorrect, Mildred never filed exceptions to the commissioners' award, never assigned any rights to the condemnation award to her daughters, and given the fact that no exceptions were filed, could not have.[2] Thirdly, I can find no case supporting the majority's extension of the law of liability on substitution to an individual who never received the money for which he/she is now being held liable. Being a case of first impression in this Commonwealth, I shudder to consider its chilling effect on future substitution practice.

This story begins on October 20, 1993, when the Commonwealth filed this condemnation action in the Letcher Circuit Court against Mildred to condemn .67 acres that she owned and lived on, at the intersection of U.S. Highways 23 and 119, near Payne Gap, in Letcher County, Kentucky. The commissioners originally appraised the value of a smaller tract at $115,000.00. But, after *the acreage was increased* at the request of the Department of Highways, subsequent commissioners increased the award for the total taking to $656,782.50. This amount was paid to the Letcher Circuit Court and disbursed to Mildred, along with her Mortgagee, the Bank of Whitesburg.

On May 20, 1996, the Interlocutory Order and Judgment was entered allowing the taking. The parties had 30 days thereafter to file exceptions to the award. On June 17, 1996, the Commonwealth filed exceptions to the commissioners' award on grounds that it was excessive. Mildred, however, filed no exceptions. In fact, she did not have an attorney of record until June 12, 1998, after being ordered to do so by the court.

On July 3, 1999, after the matter had dragged on for years, Mildred deeded her tract of property, within which lay the condemned tract, to Betty and Peggy. This conveyance was subject to the Interlocutory Order and Judgment and Lis Pendens Notice previously recorded. Mildred did not include her son in this conveyance; nor did she assign with the conveyance, any chose in action to contest the commissioners' award. In fact, Mildred remained the defendant in the action until

---

1. $75,000.00 or more went to the Bank of Whitesburg, the Mortgagee on the condemned property. The record also reflects that once Mildred was displaced from her property, she purchased a replacement home in downtown Jenkins, near one of her daughters. The disposition of this home is unknown. The disposition of the remaining monies, whether for elderly care, or whatever, is also unknown. It should also be noted, that this action was filed in November, 1993, yet concluded nine and a half years later by trial and judgment of the Letcher Circuit Court, dated March 3, 2003.

2. Jury instructions in condemnation cases can be misleading. It is one of the rare exceptions where jury instructions do not contain maximum or minimum values to guide the jury. *See Com., Dept. of Highways v.C.S. Brent Seed Company*, 376 S.W.2d 310, 311 (Ky.1964) ("It is our further opinion that instructions in condemnation cases should not state either maximum or minimum limits of recovery .... [as] it would in effect have told the jury what the ... commissioners had awarded."). *See also Com., Dept. of Highways v. Spillman*, 489 S.W.2d 811, 814 (Ky. 1973) ("While there is merit in the trial court's position, it has been rejected and we adhere to the rule that the pattern instructions set out in *Com., Dept. of Highways v. Priest*, Ky., 387 S.W.2d 302 (1965) ... should have been followed.").

her death, in March of 2001. Her surviving heirs were Betty, Peggy, and one son.

Following their mother's death, Betty and Peggy moved to be substituted, through counsel, "as parties to this action," noting that "Mildred ... conveyed her interest in this property to the movants herein and therefore they are the real parties in interest." It is uncontested that Betty and Peggy received this conveyance to the property within which the condemned .67 acres lay and that they would therefore be "real parties in interest" from which the later deed of title to the Commonwealth would be made.

Thereafter, on December 19, 2002, the matter went to trial on the Commonwealth's exceptions to the excessiveness of the award. At trial, the Commonwealth introduced evidence that the property taken had a fair market value of $115,000.00. Betty and Peggy defended the commissioners' award made to Mildred, with proof that the fair market value of the property taken was 1.2 million dollars. The jury then determined the fair market value of the property taken to be $300,000.00. This created an overpayment to Mildred in the amount of $356,782.50, repayable at 6% interest from and after the date of its original distribution. However, the Court's final Order and Judgment dated March 10, 2003, ordered the Appellants, Betty and Peggy, to repay this amount to the Commonwealth. They, of course, filed post-judgment motions noting they had "never received any of the money ordered repaid and therefore cannot be ordered to pay the same." However, their post-judgment motions were denied on September 20, 2004. This appeal followed.

### Eminent Domain Procedures

### The Owner

In a direct condemnation action ... the fact and extent of the taking are known.

In such an instance, it is a general rule of the law of eminent domain that any award goes to the owner at the time of the taking, and that the right to compensation is not passed to a subsequent purchaser. *Danforth v. United States,* 308 U.S. 271, 284, 60 S.Ct. 231, 84 L.Ed. 240 (1939); 2 Sackman, Eminent Domain, at § 5.01[5][d][i] ("It is well settled that when there is a taking of property by eminent domain in compliance with the law, it is the owner of the property *at the time of the taking* who is entitled to compensation").

*Palazzolo v. Rhode Island,* 533 U.S. 606, 628, 121 S.Ct. 2448, 2463, 150 L.Ed.2d 592 (2001), *see also Stickley v. Chesapeake & O.R. Co.,* 93 Ky. 323, 20 S.W. 261, 262, 14 Ky. L Rptr. 417 (1892) ("the vendees ... took the property (if damaged) in its depreciated condition, and there is no rule of law or equity that would permit them to recover damages they never sustained."). "The right to recover for trespass to real property does not pass with the conveyance of the land." *Bramblett v. Slemp,* 32 Ky. L Rptr. 1329, 108 S.W. 339 (1908).

"For purposes of the rule that compensation must be paid to the person who owned the property at the time it was taken or injured, the word 'owner' includes any person having a valid interest in the land who sustained loss or damage at the time of the taking " 29A CJS Eminent Domain § 225 (2007) (footnotes omitted). Moreover, where exceptions are filed by the land owner to the commissioners' award and,

[w]here the landowner dies after the taking of the property, the compensation is payable to his or her estate. If the land is taken or injured during the lifetime of the owner, the right to the compensation passes to the owner's executor or administrator, and this right of the

personal representative continues until distribution of the estate has been made. 29A CJS Eminent Domain § 246 (2007) (footnotes omitted).

Thus, the owner is determined as of the "taking date." KRS 416.620(5). Here, the "taking date" was the date of the Interlocutory Judgment, May 20, 1996. Thus, it is the owner on this date, who is entitled to, or obligated to pay, the interest set out in KRS 416.620(5). And if not paid, "the condemnor shall be entitled to a personal judgment *against the owner for* the amount of the decrease plus interest at the rate of six percent (6%) per annum from the date the owner accepted the amount of compensation the condemnor paid into court or to the owner." *Id.* (Emphasis added). Subsequent owners are afforded *only* the rights of repurchase, upon failure of the Commonwealth to develop the property taken within eight years and are referred to therein as "current land owners." KRS 416.670.

Pursuant to the statutory scheme:
[t]he risk of loss of overpayment to the owner of a particular interest must fall on the condemnor. The problem is created by the condemnor's election to take possession of the property being condemned prior to a final determination of just compensation. Since the condemnor is required to pay the commissioners' award prior to final judgment only as a means of obtaining immediate possession, the risk of loss should fall upon the condemnor rather than the other owners who had no choice in the matter.

*Foster v. Sanders,* 557 S.W.2d 205, 212–13 (Ky.App.1977) (internal citation omitted).

### *Exceptions*

Where a party, however, fails to file exceptions to the commissioners' award, he is prohibited from receiving any award in his favor greater than the commissioners'

award, even though a verdict for such may be returned by the jury. *Com., Dept. of Highways v.C.S. Brent Seed Company,* 376 S.W.2d 310, 311 (Ky.1964). In *C.S. Brent Seed Company, supra,* the commissioners awarded $12,896.33. The land owners filed exceptions concerning the inadequacy of the award, but the Commonwealth filed no exceptions concerning its excessiveness. *Id.* at 310. The jury then returned a verdict of $9,560.00. Jd Judgment, however, was entered upon behalf of the landowner for the full amount of the commissioners' award, $12,896.33. *Id.* at 310–311.

The landowners' appeal stated exceptions to the award on the ground it was inadequate. This was the only issue before the circuit court relating to the amount of compensation. The jury having arrived at an amount still less than the [commissioners' award], that issue was resolved against the landowners. But to deprive them of the benefit of the [commissioners' award], the recovery to which they were entitled had they not appealed at all, would in effect give one party an automatic cross-appeal in the event of an appeal by the other. This would contravene the policy of the statute.

*Id.* at 311; *see also Bullitt v. Com. By & Through Dept. of Highways,* 298 S.W.2d 290, 292 (Ky.1957) ("We agree that the question of *excessiveness* of damages was to be tried ... on appeal; [however] both the appellants and the Commonwealth were free to introduce evidence, whether presented in the County Court or not, in support of their respective positions. This does not mean that issues not raised on the appeal [i.e., inadequacy of the award] may later be injected."); *Kentucky Utilities Co. v. Brashear,* 726 S.W.2d 321, 322 (Ky.App.1987) ("The issue is whether the circuit court had discretion to permit the

late filing of exceptions ... resulting in a jury determination of an award in excess of the commissioners'. We agree that the circuit judge erred.").

In this instance, Mildred was the owner at the time of the taking and thus, received the commissioners' award, less that paid to the Bank of Whitesburg. Betty and Peggy were not. In fact, had they *not intervened to* put forth evidence to protect their mother's commissioners' award, the only evidence presented to the jury on the Commonwealth's exceptions would have been the Commonwealth's evidence of a value of $115,000.00, a value $185,000.00 less than determined by the jury. Thus, they should not be penalized for trying, as best they could, to protect their mothers' commissioners' award.

### Assignments

"In case of any transfer of interest, the action may be continued by or against the original party, unless the court upon motion directs the person to whom the interest is transferred to be substituted in the action or joined with the original party." CR 25.03. This ceases to be true on the death of a party. Here, Mildred only conveyed her title to the real estate to Betty and Peggy, by deed dated July 3, 1999. The deed *did not contain* an assignment of any chose in action to a judgment in excess of the commissioners' award. It is simply a "quit claim" deed which makes no attempt to assign any such right.

"[A] valid assignment is made when the context of the assigning instrument shows the intention of the owner of a chose in action to transfer it to the transferee." *Roberts v. Powers,* 303 Ky. 489, 198 S.W.2d 58, 60 (1946). "Nowhere in the deed ... were the ... chooses in action here involved mentioned, directly or indirectly. The conveyance purported to transfer only the title ... in the land described in the

deed...." *Id.* "In no event may an assignee maintain an action for any part of a claim which has not been assigned to him." *Works v. Winkle,* 314 Ky. 91, 234 S.W.2d 312, 316 (1950).

The deed between Mildred and her daughters reflects that no such assignment was intended, yet in any event, there could not have been an assignment of any right to a judgment in excess of the commissioners' award, since no exceptions were ever filed. This is consistent with the intervention of the daughters after the death of their mother. In which case, they were "real parties in interest" for reasons that they then held record title to the land, which by description, also included the land already taken under the interlocutory judgment. And thus, they were necessary parties to the extent of the commissioners' deed to follow, upon which the Commonwealth's title of record would depend.

> Section 732(18) of the Civil Code provided that the words 'real representatives' mean the heir or devisee of real property of a deceased person. While it is true that Section 732 has long since been repealed as being obsolete and Section 506 has been replaced, in effect, by CR 25.01, the definition of real representative and his place in litigation involving real property has not changed.

*Levin v. Ferrer,* 535 S.W.2d 79, 82 (Ky. 1975).

Thus, it is clear that Betty and Peggy did not intervene, nor were they substituted, for any direct pecuniary benefit for themselves as parties.

### *Having intervened to protect their mother's commissioners' award, are they liable for repayment of monies they never received.*

The majority cite the case of *Citizens Bank & Trust Co. v. McEuen,* 281 Ky. 113, 134 S.W.2d 1012, 1014 (1939), for the gen-

eral rule that, when a party is substituted for another party, he "takes up the litigation with all of its benefits and with all of its burdens just where the predecessor dropped it[.]" They also cite *Hollon v. Rose*, 268 S.W.2d 641, 642 (Ky.1954) and *Works v. Winkle*, 314 Ky. 91, 234 S.W.2d 312 (1950) in support of this proposition. The cases cited, however, do not support the application of such a principle under the facts of this case.

The *McEuen* case involved only the substitution or intervention, of a Bankruptcy trustee for the purposes of acquiring surplus proceeds in excess of the bank's lien. *McEuen*, 134 S.W.2d at 1014. The rule therein relied on, was "[t]he substituted party, as a general rule, takes up the litigation with all of its benefits and with all of its burdens just where the predecessor dropped it; *and the pleadings filed by the bank, including the petition for revivor, became the pleadings of the intervening trustee.*" *Id.* (emphasis added). Thus, the cited rule was only applied to give the intervening trustee the benefit of its' predecessor's pleadings. *Winkle* is only relevant to the extent it holds that "[i]n no event may an assignee maintain an action for any part of a claim which has not been assigned to him." *Winkle*, 234 S.W.2d at 316. *Rose* is relevant only to the extent that it holds that it is permissible for one to be made "a party to the action as an assignee after he had purchased the interest of one of the [parties]." *Rose*, 268 S.W.2d at 642. *Rose* dealt only with a court sale of jointly owned land. *Id.*

As to the circumstances for which the majority cites *McEuen,* the only cases I found somewhat on point, *went the other way.* In *Graham v. Stewart*, 152 Miss. 307, 120 So. 171, 172–73 (1929), the plaintiff Graham was permitted by the trial court to be substituted for the existing plaintiff, Wilder Motor Sales, for reasons

that Graham had acquired from Wilder Motor an assignment of an account owed Wilder Motor by the defendant, Stewart. At the time of the substitution allowed by the trial court, Stewart had an existing counterclaim filed against Wilder Motor for an amount in excess of the claim of the account assigned to Graham. *Id.* At trial, Stewart then recovered judgment against Graham on his counterclaim for an amount in excess of the assigned account. *Id.* In denying Stewart recovery against the substituted plaintiff, Graham, for the amount of his claim in excess of the value of the account assigned to Graham, the court stated:

> The evidence in the case tended to show that appellee's counterclaim on which he recovered judgment over against appellant was in existence before this action was brought and before the assignment to appellant of the account by the Wilder Motor Sales Company, upon which the action was based. Under the statute, therefore, appellant acquired the account by assignment from the Wilder Motor Sales Company subject to whatever set-off or other defense that existed between the original parties. But did it follow as a result thereof that appellee was entitled to recover over against appellant on his counterclaim? We think not. As against appellant, appellee was only entitled to use his offset defensively, and not offensively; he was not entitled to recover over against appellant, for appellant was not indebted to appellee in any sum whatever.

*Id.*

Moreover, in *Watkins v. Mowbray & Robinson Co.*, 212 Ky. 118, 278 S.W. 557, 559 (1925), the court held that "the fact of becoming a party after the institution of the action, by intervention or otherwise, does not relate back to the beginning of the action *so as to entitle the intervener to*

*the benefit of all bonds or obligations executed to the original defendant* required by the practice for the obtention of the particular relief sought." (Emphasis added). In *Watkins*, Mowbray & Robinson Company had filed suit in the United States Federal Court against George Mullins, who they claimed was a trespasser on a tract of property owned by them. In order to acquire a temporary restraining order against Mullins, forbidding him from any future trespasses and mandatorily requiring him to move a building he had partially constructed on the property, Mowbray & Robinson posted a bond for any damages the injunction might cause, if wrongfully granted. *Id.* at 558.

Watkins, who was Mullins's landlord, then intervened in the action and was thereafter adjudicated as the true owner of the property, with Mullins as her tenant. *Id.* She then sued Mowbray & Robinson for damages incurred pursuant to the injunction bond posted. The judgment on the bond aforementioned, dating back to the beginning of the action was denied; *thus she was adjudged not entitled to the benefit of the bond executed to the original defendant, Mullins, her tenant. Id.* at 560. (Emphasis added).

Although the cases discussed do not address issues raised under KRS 416.620(5), the condemnor's right to recover from an owner for an overpayment, they directly question the majority's interpretation, and application, of the doctrine extrapolated from *McEuen, supra,* to the effect that, when a party is substituted for another party, he "takes up the litigation with all of its benefits and with all of its burdens just where the predecessor dropped it[.]" *Id.* at 1014. While, it is true that the substituted party must stand in the shoes of the party for whom he substituted and that such party is bound procedurally by the posture of the case as it exists at the time

of his entry, he is not, however, obligated for the debts and liabilities of his parties' predecessor, except as otherwise provided by law.

And unless there is some other rule of liability, "[a]n action to recover a payment must be brought by the person ·... entitled to recover against the person who actually received the payment." 70 CJS Payment § 131 (2005).

> [N]o recovery in an action at law may be had against any one other than him to whom the erroneous payment was made. The action should be against the person actually receiving the payment.'... Were this a suit in equity with the object of declaring a trust and following the fund into the hands of a transferee, different questions might arise.

*U.S. v. Hart,* 12 F.Supp. 596, 596 (D.C.Pa. 1935). For example, "[t]he rule is, if a creditor has a claim against the estate of a testator or an intestate, he may sue a devisee or an heir after he receives assets of the estate; but he is only liable to the extent of the assets received." *Collett v. Helton,* 264 Ky. 214, 94 S.W.2d 603, 604. Thus, "[a]fter assets of an estate have been distributed ... an undischarged claim not barred may be prosecuted in a proceeding against one (1) or more distributees. No distributee shall be liable to claimants for amounts received ... in excess of the value of his distribution as of the time of distribution." KRS 396.195.

Here, the judgment against Betty and Peggy was for the excess amount paid to Mildred. It was not recognized, nor treated, as an action against heirs or distributees, as required and thus, it was not confined within its' proper limits, i.e., the value of the distributees' share of the debtor's estate. This was error which was properly preserved. No evidence in the record indicates that Betty and/or Peggy ever received any of the commissioners'

award paid to their mother, or that her estate did so. The Appellant's brief simply alleges, "it is believed that this money was spent prior to Mrs. Hunsaker's death."

Thus, the judgment against the Appellants, Betty and Peggy, should be reversed and the matter remanded to the Letcher Circuit Court, in order to determine the extent to which the judgment exceeds the value of the property, or properties, received by them from their mother, Mildred, or her estate, and for such other proceedings consistent herewith as the court should determine. This said, I dissent.